# United States Court of Appeals for the Federal Circuit

06-1073

ROBERT D. THOMPSON,

Plaintiff-Appellant,

v.

MICROSOFT CORPORATION,

Defendant-Appellee.

Andrew Kochanowski, Sommers Schwartz, P.C., of Southfield, Michigan, argued for plaintiff-appellant.

Constantine L. Trela, Jr., Sidley Austin, LLP, of Chicago, Illinois, argued for defendant-appellee. Of counsel on the brief were William A. Sankbeil and Fred K. Herrmann, Kerr, Russell and Weber, PLC of Detroit, Michigan.

Appealed from: United States District Court for the Eastern District of Michigan

Judge Arthur J. Tarnow

# United States Court of Appeals for the Federal Circuit

2006-1073

ROBERT D. THOMPSON,

Plaintiff-Appellant,

v.

MICROSOFT CORPORATION,

Defendant-Appellee.

_____

DECIDED:  December 8, 2006

_____

Before MAYER, BRYSON, and LINN, Circuit Judges.

LINN, Circuit Judge.

Robert D. Thompson appeals from a dismissal by the United States District Court for the Eastern District of Michigan of Thompson's unjust enrichment claim against Microsoft Corporation ("Microsoft").  Thompson v. Microsoft Corp., No. 00-CV-74276 (E.D. Mich. Oct. 3, 2005).  Although not raised as an issue in the written submissions, we instructed the parties to be prepared at oral argument to address the question of whether this case "arises under" the patent laws as contemplated in 28 U.S.C. § 1338.  Because we conclude that this court lacks jurisdiction over Thompson's appeal, we transfer the case to the United States Court of Appeals for the Sixth Circuit.

BACKGROUND

In the early 1990s, a number of programmers were working on enhanced, programmable folders for use in computer operating systems like Windows. Thompson conceived and developed software that used object-oriented programming concepts to create programmable and extendible folders for improved data storage, which Thompson called "SmartFolders." In January 1993, Thompson posted a question to a computer forum seeking assistance on a bug he encountered when trying to incorporate Windows' clipboard feature into SmartFolders. Thompson alleges that a representative of Microsoft's Developer Relations Group contacted him to assist in solving the problem and that Thompson sent part of his software to that representative in January 1993. Shortly afterward, Rick Segal, another member of the Developer Relations Group, allegedly contacted Thompson regarding co-marketing opportunities for the SmartFolders software at the Windows World trade show in May. In furtherance of that opportunity, Thompson developed a version of SmartFolders for Microsoft's upcoming Windows NT operating software and allegedly sent that version to Microsoft on April 23, 1993. Thompson concedes that he did not enter into any non-disclosure agreement or other formal contractual relationship with Microsoft. Thompson nevertheless alleges that he shared the technology in confidence and with the understanding that Microsoft would not appropriate the technology for its own use.

Thompson alleges that, without his knowledge, a Microsoft presenter at the OLE 2.0 Conference publicly discussed Thompson's SmartFolders technology and claimed it as a Microsoft product on May 3, 1993. During the Windows World trade show from

May 19-24, 1993, Thompson demonstrated and distributed the commercial version of the SmartFolders software and provided written materials that described the product.

On May 2, 1994, Microsoft filed a patent application for a programmable folder technology, which resulted in U.S. Patent Nos. 5,682,532 and 5,771,384 (the "Microsoft patents"). During prosecution of the Microsoft patents, the inventors disclosed Thompson's software as relevant prior art, and a press release describing the software was cited as a reference on the face of the issued patents.

On August 23, 2000, Thompson filed a one-count complaint for unjust enrichment against Microsoft in Michigan state court based on Microsoft's alleged misappropriation, patenting, and use of Thompson's intellectual property. Microsoft removed the action to federal district court, alleging diversity jurisdiction under 28 U.S.C. § 1332 and federal question jurisdiction under 28 U.S.C. § 1338(a). Thompson filed an amended complaint, again alleging only unjust enrichment under Michigan state law. Specifically, the complaint averred:

> 7. Plaintiff's disclosure and discussion of his proprietary software technology with Defendant was made at the request of Defendant and with the explicit and/or implied promise that Defendant would not appropriate said proprietary technology for its own use.
>
> * * *
>
> 15. Defendant has been unjustly enriched by its unauthorized, unlawful and unjust misappropriation, patenting, and use of Plaintiff's intellectual property, including, without limitation, the use of technology not invented by Defendant, and the benefit garnered by obtaining, using, and owning two patents to enhance its patent portfolio, value of its intellectual property, and for cross licensing with competitors or others.

(Compl. at 2, 4.) Microsoft averred in its answer that Thompson's claim was preempted by federal patent law.

On January 14, 2002, Microsoft moved for summary judgment; that motion was denied. On September 12, 2002, the district court stayed the case pending the outcome of an interlocutory appeal to the Federal Circuit in Ultra-Precision Manufacturing, Ltd. v. Ford Motor Co., No. 01-CV-70302 (E.D. Mich. Sept. 5, 2001), which also involved the question of whether an unjust enrichment claim under Michigan law was preempted by federal patent law. We dismissed the interlocutory appeal in Ultra-Precision for lack of jurisdiction without consideration of the preemption issue. Ultra-Precision Mfg., Ltd. v. Ford Motor Co., 338 F.3d 1353, 1358 (Fed. Cir. 2003).

The district court lifted the stay in this case in October 2003, and in June 2004, Microsoft filed a renewed motion for summary judgment. Proceedings were again stayed, however, pending our decision on the appeal from the final judgment entered after remand in Ultra-Precision. On June 15, 2005, we held that the unjust enrichment claim as pled in Ultra-Precision was preempted by federal patent law and affirmed the district court's decision on that issue. Ultra-Precision Mfg., Ltd. v. Ford Motor Co., 411 F.3d 1369, 1382 (Fed. Cir. 2005).[1] In reaching that conclusion, we noted that the appellant's complaint did not plead that the appellee received any incremental benefit over and above the benefit the general public received from ideas that had been placed in the public domain. See id. at 1379-81.

Following our decision in Ultra-Precision, Microsoft and Thompson submitted supplemental briefs in this case to the district court. The district court held a hearing on Microsoft's motion on September 28, 2005. Thompson conceded that, according to

---

[1] The appellant in Ultra-Precision also appealed the district court's ruling denying its claim for correction of inventorship. 411 F.3d at 1376. We affirmed the district court's judgment on that issue. Id. at 1383.

Ultra-Precision, a substantial part of the original damages claim was preempted by federal patent law. During the hearing, however, Thompson's counsel moved for the district court to treat the amended complaint as having included a request for the type of "incremental benefit" damages identified by our decision in Ultra-Precision. The court granted Thompson's motion. After much discussion, the district court ultimately concluded that "we are arguing about what should be argued in patent courts. And it's preempted." Accordingly, the district court granted Microsoft's motion for summary judgment and dismissed Thompson's claim for unjust enrichment.

Thompson filed a timely appeal to this court, alleging that his claim involves a substantial question of patent law according to 28 U.S.C. § 1338(a) and that we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

As a threshold matter, we must first determine whether this court has jurisdiction over the appeal. "Whether this court has jurisdiction over an appeal taken from a district court judgment is a question of law which we address in the first instance." Pause Tech. LLC v. TiVo Inc., 401 F.3d 1290, 1292 (Fed. Cir. 2005). "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto. . . . For that reason, every federal appellate court has a special obligation to satisfy itself . . . of its own jurisdiction . . . ." Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986) (internal quotation marks and citations omitted); see also Kinetic Builder's, Inc. v. Peters, 226 F.3d 1307, 1311-12 (Fed. Cir. 2000).

Section 1295(a)(1) of Title 28 grants the Court of Appeals for the Federal Circuit exclusive jurisdiction over "an appeal from a final decision of a district court of the United States . . . if the jurisdiction of that court was based, in whole or in part, on [28 U.S.C.] section 1338 . . . ." Section 1338(a), in turn, provides in relevant part that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . ." Thus, we must determine whether this is a case "arising under" federal patent law such that the jurisdiction of the district court was based at least "in part" on section 1338.

In <u>Christianson v. Colt Industries Operating Corp.</u>, the Supreme Court held that jurisdiction under section 1338(a) extends "only to those cases in which a well-pleaded complaint establishes either [1] that federal patent law creates the cause of action or [2] that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded complaints." 486 U.S. 797, 808-09 (1988). Here, there is no question that the state law of Michigan, and not federal patent law, creates Thompson's unjust enrichment claim. The relevant question therefore centers on whether patent law is a necessary element of Thompson's well-pleaded unjust enrichment claim.

Although Thompson's complaint alleges that Microsoft filed a patent application for intellectual property that Thompson invented, such a fact—even if true—is not a necessary element of Thompson's claim. Thompson pleads that he shared proprietary information with Microsoft under certain conditions, that Microsoft used this proprietary information without Thompson's knowledge or permission, and that Microsoft was unjustly enriched by its misappropriation, patenting, <u>and use</u> of that proprietary

information. Such a pleading is not limited to the fact that patents were obtained; rather, Microsoft's alleged unauthorized use of the proprietary information supports the count of unjust enrichment on its own. Indeed, at oral argument Thompson's counsel verified this interpretation of the pleadings by acknowledging that inventorship is "irrelevant" and "not critical" to the pleaded cause of action and that Thompson can succeed in the unjust enrichment claim without proving improper inventorship. Because inventorship is not necessary to the success of Thompson's unjust enrichment claim, and because "a claim supported by alternative theories in the complaint may not form the basis for [section] 1338(a) jurisdiction unless patent law is essential to each of those theories," Christianson, 486 U.S. at 810, Thompson's well-pleaded complaint does not establish that the right to relief necessarily depends on resolution of a substantial question of federal patent law. Thus, the district court's jurisdiction does not "aris[e] under" section 1338.

Moreover, Microsoft's defense on preemption grounds does not provide this court with jurisdiction over the appeal. "[A] case raising a federal patent-law defense does not, for that reason alone, 'arise under' patent law, 'even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.'" Christianson, 486 U.S. at 809 (quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 14 (1983)).[2] We therefore conclude that we lack jurisdiction over this appeal.

---

[2] We note that, in determining whether federal question jurisdiction exists, the Supreme Court has held that "[o]ne corollary of the well-pleaded complaint rule . . . is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987). Thus, in some instances, an area of law is so

When jurisdiction is lacking, "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. We consider it to be in the interest of justice to transfer the present appeal to the appropriate appellate court for further proceedings. Because this case was appealed from a final judgment of the United States District Court for the Eastern District of Michigan, we direct that the appeal be transferred to the United States Court of Appeals for the Sixth Circuit.

TRANSFERRED

COSTS

No costs.

---

clearly and completely preempted that a complaint in such an area of law may present a federal question even though it raises only state law causes of action. See, e.g., id. at 67 (holding claims within the scope of section 502(a) of ERISA completely preempted); Avco Corp. v. Aero Lodge No. 735, Int'l Assoc. of Machinists and Aerospace Workers, 390 U.S. 557, 560 (1968) (holding claims within the scope of section 301 of the LMRA completely preempted). Thompson's claim is not within the scope of such an area of law. See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,489 U.S. 141, 152-57 (1989) (recognizing that the broadest reading of its precedent on the preemptive effect of federal patent law "would prohibit the States from regulating . . . the tortious appropriation of private information" and rejecting such an "ipso facto preemption" reading of federal patent law).